Good morning, please proceed, I've got a lot of issues which I would choose to highlight. Good morning and may it please the court, I'd like to spend my time today discussing essentially two issues, the claim construction issue and the enhanced damage issue. So I'm going to start with the claim construction issue, if that's okay with the court. The patent claim is not complicated, it narrowly claims a coaxial cable connector that clamps and seals the cable using the connector body itself and without a separate sealing or clamping member. And in particular the PPC 194 patent claims a cylindrical body that includes a cylindrical sleeve and in practice what happens is a compression ring slides over the sleeve and causes it to deform inwardly and then to clamp and seal the cable. And the PPC 940 patent similarly claims a connector body that has a deformable end that deforms inwardly. And the issue that you're talking about is whether or not there's a unitary piece that's necessarily required. Yes, it's clear from the patent language itself, the actual claim language that the cylindrical sleeve which is deforming inwardly is included in the cylindrical body member and here's where the district court erred, the district court erred by adding to this plain claim language a sentence and the sentence, the district court's added sentence says, quote, the structure can be comprised of more than one piece and is therefore not limited to a single interval or unitary one piece component, end quote. Well that language, that sentence doesn't appear anywhere in the claims themselves. No, well I recognize that but I think, you know, arguably the district court did exactly what he or she should have done under, again, 02 micro where if that was, I mean, if that was the central issue, division between the parties as to whether or not infringement. Well the purpose of claim construction, of course, is to aid in an explanation of technical terms not to eviscerate claim terms or to expand the scope of the claim. So your view is that the court should not have specified whether there is a unitary structure necessitated by the claim language and that should have just been up for grabs in the trial? It's not up for grabs, Your Honor. The claim language is plain, the claim language is plain that the cylindrical sleeve has to be included in the cylindrical body member and what the district court did is. So why can't it be two pieces put together? Is that what the issue is, whether you can take two pieces and put them together as opposed to having one unitary piece only? Well, here's why our gripper cannot be a separate cylindrical sleeve, it cannot be two pieces. It would not perform the other functions required by the claim language and I don't know that I can say it any better than what the Court of International Trade said and I'm just going to read to you what the Court of International Trade said as to why our separate gripper should not be considered part of the connector body. The Court of International Trade says that Corning's gripping ring is irregularly shaped, at least with three different diameters, so if it was considered to be part of the connector body, the connector body could not have a cylindrical sleeve at the opposite end that is attached to the post and the CIT went on to say that the gripper should not be considered to be part of the connector body because it does not form a bore about the two-bidder post as is required by element C and further... What's the binding effect of the CIT decision in this case? Well we have not argued that it's entitled to collateral estoppel or issue preclusion but it is certainly persuasive. The CIT analyzed in a heavily contested proceeding, PPCs 190... Did the CIT analyze the same claim terms of our issue here? Yes they did. They analyzed the 194 patent claims 1 and 2, the only two claims in the patent. It was an adversarial proceeding between Corning and the United States government. Evidence was adduced and... The district court's not obligated to adhere to the CIT decision, correct? We did not argue that it has collateral estoppel effect because PPC was not a party technically to the CIT decision, although PPC initiated the proceeding by... But they weren't allowed to participate? By causing... Yes, and that's under the CIT rules, that's not any adversarial position. Can you point us to the intrinsic record? Let's move away from the CIT opinion and tell us what in the intrinsic record supports your claim construction. Sure, and we drew that in our brief but let me summarize it for you. First of all, the specification itself disparages, as a shortcoming of the prior art, connectors that use separate ceiling pieces and that appears in the 194 patent, for example, in So there's a disparagement in the specification itself of using separate ceilings. I'm sorry, can you tell us column two, what line? It was column two, lines 20 through 23, Your Honor. This is the O-ring? Yes. As you can see what it says, quote, another shortcoming of known connectors is the need for an O-ring or similar ceiling member to prevent moisture from penetrating the N-connector between the connector body and the outer sleeve components. But your friend's response to that, so we can just sort of get your response, as I understand it, is that the O-ring, whether an O-ring is used, has nothing to do with whether the cylindrical body member must be a unitary structure. Well, it has everything to do about it. I'm sorry. And the benefit of avoiding O-rings is accomplished regardless of whether the deformable sleeve is a separate piece. I totally disagree because the patentee here told us that this invention, what this invention is all about, the novelty of it, is that it clamps and seals the cable with the connector body itself and without using a separate ceiling member. And the patentee in the specification goes on to disparage as shortcomings of the prior art connectors, it's a very crowded art, connectors that do use separate ceiling members and separate O-rings. An O-ring is a separate ceiling member, and there are other types of separate ceiling members. And in fact, that's exactly what Corning did here. We use a separate ceiling member that is stuffed into the connecting body and that doesn't go over a sleeve or a rear end of the connecting body and deform it inwardly. It's stuffed inside. And that is exactly the prior art that this patentee is disparaging. Now I'd like to follow up. There's a few more examples of the extrinsic evidence that's responsive to your question, Judge Prost. So there is a specification. There is the patent prosecution history as well, where the patentee provided the patent office with a chart, and we've reprinted a part of the chart at page 24 of our brief. But here we see the patentee defining his own claim terms, defining the essential elements of the invention. And the chart at page 24 of our brief defines the cylindrical sleeve as, quote, the right portion, end quote, of the cylindrical body member. And the chart shows that the patentee represented to the patent office that the cylindrical sleeve is always part of the cylindrical body member. It's not a separate piece. And so what we have here is specification language, prosecution history that is consistent with one invention. Can you explain to me why that statement, prosecution history, really addresses whether the overall scene of the body members could be comprised of different pieces put together? I'm not making the connection. OK. Well, it shows because the patentee always described the invention as a connector body where in the cylindrical sleeve is included, in other words, a unitary part of the connector body and not separate floating pieces. OK. Now, you could conceivably manufacture this connector body with a cylindrical sleeve out of multiple pieces. But you can't have them, as the district court said, unconnected, non-interval. Otherwise they do not meet the, they do not perform the essential functions that are spelled out in the claim language. The function being, again, to have a sleeve that deforms inwardly and that defines the by itself an integral piece, a one-piece unit that clamps and seals the cable. If you have separate pieces floating about, then they do not perform the essential function of the invention. And one way to, that might help illustrate that point is if you imagine a water line or sewer line, it's composed of different lengths of pipe. To be sure, the line could be manufactured with the pieces, separately pieces welded together or joined together. But if they're scattered about the lawn, if they're not connected, then they're not performing the essential function of the invention. And that is where this falls apart here because if you don't, if you say, well, why can't the gripper be separate from the connector body, then there's no enablement, there's no description in the claim as to how it meets all these other functions of defining a bore, of having a connector body that's secured, it went under the post. Were there validity challenges before the jury here? No. We're not challenging the validity of the claim. But I will tell you that if the district court's construction is sustained, then it reads right on one of the patents that it is cited in the specification, the ZEGDA 577 patent. We discuss that at pages 29 through 31. And what ZEGDA does is it teaches a cable connector that has a separate piece that deforms in relation to the cable. And I'm not citing that to argue that PPC's patents are invalid. My point is that PPC's patents should be construed to preserve validity and not in a way, not  Well, that's not a firm tenet of our case law anymore, certainly not after Phillips. I'm not saying that it's an unavoidable rule. I'm saying it is a consideration to be used, to be looked at in construing patents. Can we address your damages issues real quick? Sure. I mentioned I want to talk about the enhanced damages and that the enhanced damage award must be reversed in our view. And I think the genesis of the enhanced damage award was the district court's factually erroneous jury instruction. And as you know, because we've talked about it, the Court of International Trade held that Corning's accused patents did not infringe claims one and two of PPC's 194 patent. When you went from the 204 design to the 205 design, why didn't you obtain an expert opinion letter at that point? Well, there was an expert opinion that was adduced in the Wisconsin case, it was provided, and the expert opinion was that the Corning strippers were not included in the connector body. That expert opinion was provided to PPC, and there was no objection. So that did all happen in about the 2003 time frame. And then we go to trial before the CIT, and the CIT held that Corning's strippers did not infringe the 194 patent. And here's where the damages went off the rails, if I could address your honors damages question. The district court instructed the jury that the CIT decision, quote, did not involve the same claim terms or claim definitions that I have supplied you in this case, and went on to say that the issues of infringement before you are different than those in that case. End quote. I think I understand your argument. That was incorrect. That was incorrect. And even though he said that you can use it in the willfulness case, if there's a factual assumption that none of the claims corresponded, that might affect how effectively they consider it in the willfulness thing. Do I have your argument? Is that how? Essentially, yes. The prejudice was manifest. The district court effectively told the jury to disregard the CIT decision. It's not relevant. Effectively told that. OK. The problem having. Didn't they instruct the jury on willfulness with respect to the CIT letter? Yes. I've read to you what was part of the judge's instruction on willfulness, where the judge instructed. But you're saying that that willfulness instruction was insufficient because it was colored and limited by the incorrect reference to the fact there were no overlapping claims in the instruction on infringement? To put it a little more bluntly, I would say it was just factually incorrect. The same patent was involved. The same claim issues were involved. The same accused products were involved. But what I'm trying to get to, accepting that, what was the effect of the instruction? And I thought your argument was that because even though he said you can consider the willfulness, if the willfulness, the jury thought, was just about different claims and not these claims, it would have had less of an impact. Yes. Yes. I think the jury. My problem with that argument, though, is I'm not sure. It's clear for me in the record, so maybe you can tell me where it is, that that was correctly preserved. Sure. And I've got the appendix 10, 926, and 927, where Mr. Lovell, that's your lawyer, right? Yes. Mr. Lovell was the trial counsel below, and he repeatedly objected to the district court's proposed instruction on the CIT and asked the district court to correct it. Well, can you tell me where, because I'm looking at one exchange, and he says, I think the same claim terms in claim one, but different construction on those claims. I'm wondering if that's what you said. So he's questioning the judge. And then he says, that's right, but I just, if you want to have an accurate statement of the differences, and the judge says, well, no, I'm happy with what I've done. And Mr. Lovell says, OK. And? Well, I don't think he was acquiescing in it. He fought very hard to. Why don't you show me, do you have it in the appendix? Because if there's something beyond this conversation, this exchange, I'm not, don't know where it is. Yeah, well, we've cited in our brief where Mr. Lovell objects to it. He proposes a different instruction. And then the judge says, I'm happy with what I've done. That's the exchange. But Mr. Lovell clearly, clearly objects to the court's instruction. And in fact, proposes a different one. Well, that was, was that early on? OK, can you show me where that is? Yeah, I'm looking for the site. I'm looking for the site right now. But I assure you, Your Honor, that that's what happened. Mr. Lovell didn't. I'm just trying to find out what was said when. Now, this conversation that I have, this exchange, occurred after the court gave the jury instruction. And you did raise an issue about where the claims were the same. But it seems like, at least on this exchange, I'm not sure your lawyer pressed hard enough to preserve that argument. So I'm wondering if there's anything more. I don't know what more would be required. He says, Judge, that's wrong. He submits an alternative instruction. And the district court refuses to give the alternative instruction. Where is that? OK, so let's just, I'm looking for the record. I'm having a hard time finding it. Yeah, it's at appendix. The discussion starts at appendix 10926 and through appendix 10927. And the court says, so you've reserved your record. And he goes on to say, but I'm happy with what I did. But we have a whole discussion here about how Mr. Lovell is objecting to the court's instruction about the CIT decision. He tenders a different one. And the judge says, well, I'm happy with what I did. And you've preserved your record. So like at page 1097. Yeah, 927. When he says, I'm happy with what I've done, Mr. Lovell says, OK. Is that enough? I mean, are you saying that that's not an acquiescence? I mean, I don't see anything further in terms of an objection. And I'm not sure where he officially offered up an alternative at this point. You may have had alternative jury constructions running around earlier in the case. Well, Mr. Lovell's OK was certainly not an acquisition. It was certainly not acquiescence. Mr. Lovell had already said that the judge's proposed instruction was wrong. We do propose another one. And then the judge says, I'm not going to change it. You've reserved your record. I'm happy with what I've done. And poor Mr. Lovell just says, OK, that's not acquiescence. You cannot read this record by saying Mr. Lovell did not vigorously object on behalf of Corning. I don't think that's. Before that, I don't want to belabor it. But before that, the court says, what does it matter that they can't consider the evidence for that purpose on infringement in any event? And Mr. Lovell says, that's right. But I just, if you want to have an accurate statement of the differences. I mean, I think if Mr. Lovell had explained what we've been discussing here, like it is prejudicial, Your Honor, because if they don't think the claims correspond at all, then on the willfulness application, they're not going to give a lot of weight to that in connection with the willfulness. And I mean, you agree with me, right, that that's what the impact of this was.  Mr. Lovell didn't make that argument to the court, did he? Or if he did elsewhere, I'm not finding it. Well, he makes the argument that the instruction that the judge is proposing is incorrect. He presents another one. And the judge says, I've made up my mind. You've reserved your record. Well, the judge says, why would it matter? And he doesn't give a reason of why it would matter. Am I right about that? Or am I missing something? Where are you looking at right now, Your Honor? I'm looking at 10.926. 10.926. Line 21. Well, Mr. Lovell's response is not fulsome. He says it matters. I think he's trying to say you want to have an accurate statement of the differences. That's what he says. And to be sure, it's not all that fulsome, but it is important. I don't think it can be contested to have a factually correct instruction to the jury. And this instruction was not factually correct. And Mr. Lovell was objecting to it. So I don't think you can. It's fair to read a waiver into Mr. Lovell's statement that you want to have an accurate statement of the differences. It seems obvious why you want to have an accurate statement of the differences, because you don't want to mislead the jury. And this jury was basically mislead. Worse yet, it was basically instructed to disregard the CIT decision. And the prejudice to Corning was manifest. Our witnesses relied upon it. It impaired the credibility of counsel that argued it. So I think that the prejudice is manifest. And I think under this record, it's not fair to say that there was any waiver. Okay. Well, we're way beyond our time, and that's more my fault than yours. But why don't you sit down, and we'll restore a couple minutes if we'd like. Okay, I will do that. Thank you very much. Good morning. Good morning. May it please the Court, this really isn't a claim construction case. If you read Corning's reply brief on page 7, they say that the structure can be comprised of more than one piece. They say specifically, Corning does not contend that a cylindrical body member could not be made up of separate components joined together in a single unit. What page are you on reply? On page 7 of the reply brief. Corning does not contend that a cylindrical body member could not be made up of separate components joined together in a single unit. It could. And the reason they said that is their own expert had said that in his deposition. He said that the patent doesn't exclude multiple pieces. And Corning repeated that in their closing argument, saying, we agree. Well, they go on, so can you respond to what they say? Because they go on to characterize what your argument is. Yeah, well, I'd be happy to. Now, focusing on what the claim construction actually said, the portion that the Court added, the Court simply said the structure can be comprised of more than one piece and therefore is not limited to a single integral or unitary one piece component. That's the construction. And there's nothing wrong with that because it is supported by the intrinsic record. In the intrinsic record, first of all, there's nothing limiting. There's no disclaimer. There's nothing in the prosecution history that says we're disclaiming anything other than a unitary piece. But if you look at the specification, I think the most instructive point is at column 6, line 47, where the specification talks about a first body member that includes a connector body member or cylindrical body member and a post member. And then it goes on to say, preferably the connector body and the post member are separate components. So it's using that language of a body member to describe something that has separate components. That's the opposite of a disclaimer that would say the connector body or the cylindrical body member has to be a unitary construction. So there's nothing more than the ordinary meaning that is needed here. Just our Court affirming. I see that the Court says in its opinion that in this case there's neither ambiguity in the terms nor dispute as to the scope of the claim. That's right. Was there an actual dispute as to the scope of the claim? As it turned out, there was this two-piece, one-piece dispute. The Court originally said the plain language here, no further construction is necessary. And then it became apparent that there was a dispute over the two-piece or one-piece, and that Corning intended to argue to the jury that the claims were limited to one piece, and so the Court added that. So at the time, there was just plain language, but the Court added this particular sentence, saying there's nothing limiting to one-piece structure. So really, this is a case about infringement, and the standard review there is substantial evidence. And Corning may argue that there are two pieces when put together don't make a body member, but there's a lot of evidence to the contrary. Let me move you to the willfulness and the jury instruction question. Okay. Whereas clearly nobody is arguing that the district court was compelled to follow what the CIT did or that the jury would necessarily have to follow it. Right. But it might be prohibitive at some level, and the jury is entitled to consider that. But the jury instruction was wrong. I mean, there's a big difference, is there or not, between calling out, yes, there's this related CIT opinion, but it dealt with entirely different claims, versus what is correct, which is that there was a significant, not overlap, between the claims here and the claims there. Your Honor, I think we have to look at what the Court was trying to do and make sure that the jury was not using the CIT decision to decide infringement. So the Court says you can't use it for infringement, but you can use it for willfulness. But you're not dealing with my question, is that they can't use it for infringement. Right. But one, do you think that that's true, that it couldn't have been prohibitive at all? He led it into evidence, right? He did. He did. So that's one aspect of it. But the other aspect that's more troubling to me is that clearly we could use the CIT, the jury could use the CIT decision for willfulness. Yes. But is there not, if you're a juror, I'm a juror, is there not a big difference between using a decision, which you're supposed to use for willfulness, if all of the claims were completely different in the decision, versus if some of the claims overlap? Right. Well, first of all, the Court did not tell the jury that the claims were all completely different. What the Court said was that the CIT case did not involve the same claim terms or claim definitions. There was testimony from Corning's expert that the CIT decision involved one of the same claims, Claim 1. So it's not that there was no overlap between claims. It was claim terms or claim definitions. So what does that mean? Well, if you go back to earlier in the case, in the appendix at 10074, the District Court had already instructed the jury to say the CIT case did not involve the same claim terms as the case before you, namely the claim definitions that I've supplied you in the glossary. So he's telling them it had a different claim construction, not that there was absolutely no overlap. Now we get to the actual objection to the instruction. It's ambiguous. I'm not sure whether it was preserved or not. The Court did say, you reserved your record. We haven't argued that it wasn't preserved, but I certainly think the Court here could find that it was not because of the way the dialogue took place. So if there was a... Did they propose in this dialogue, did they propose an actual alternative? I'm not aware of that, Your Honor. It's certainly on those pages 10, 9, 26, and 27. I didn't see that. And again, to go back to what I said at the beginning of that, the Court's intention here was to make sure the jury didn't confuse infringement and willfulness. And the jury was not to be considering the CIT decision for infringement because there was a different claim construction. And that sentence in the instruction that it didn't involve the same claim terms or claim definitions, what the Court was saying, use my claim constructions, not what was in the other case. There are other reasons, though, that the CIT decision wasn't particularly relevant, and so this is likely harmless error. One is the timing. It was 8 years after Corning started infringing. They had gone back to the infringing design 8 years before that. There was plenty of evidence for the jury to find concealment, copying, all the other factors that were presented. And the CIT decision, to the extent it had any relevance, it wasn't something that all of a sudden absolved Corning. Something that's kind of always bothered me about the case is probably not germane to the resolution here, but why did it take you all so long to find out that your main competitor was infringing? Well, as the Court found when it addressed the equitable estoppel, that PPC didn't know. They had blessed the original design and didn't know that Corning had gone back to the same design, or the same inward taper of the compression ring. They did do performance testing, but they hadn't actually taken it and cut it open to see if it had gone back to being an infringing design. One of the reasons was... But you don't have to cut open the cable. I mean, that's not what we're talking about. We're talking about the connector, right? Well, yes, but the way that they could actually do it, you have to dip it in epoxy, slice it in half. These things are pretty small, and you don't necessarily see that unless you do the analysis. On top of that, Corning's catalog still had the same drawing that showed the previous version. They hadn't changed it. They hadn't changed the model number. They hadn't changed the part number. And there's a finding by the district court that this wasn't enough to say that PPC should have known about the infringement. So how did you ultimately discover it? They came out with a new connector, and PPC looked at that one, and then they saw that Corning had gone back to the tapered compression ring, and so they went and looked at the other ones at the same time. That's what tipped them off. The enhanced damages here, that's an abusive discretion standard. The court went through the read factors in pretty good detail, and the court exercised its discretion. It only doubled the damages here, so it's not at the polar end, as the court said, and that was certainly within the court's discretion. What about your friend's suggestion that at least they should have prorated the damages? Are you aware of any case laws giving you that? I'm not aware of any more recent case law where there's been prorating. I believe there may have been some in the past, but that's essentially what the district court already did here by awarding double damages, was to take that into account. The timing, the CIT decision, which came eight years after they were already infringing. Once the suit was filed, Corning continued, didn't change until after the jury heard it. Who alerted customs that there was imports of infringing devices? I believe PPC initiated that. But then that's normal procedure. That is normal procedure, right. But you can't participate in the proceeding. We were not permitted to participate. I understand that. It's between customs. You had to have done, at that point, is this where this whole litigation started? Yes, that's right. The suit was filed. Any further questions? Thank you. Thank you very much. Judge Prost, I found the answer to your question about Corning's jury instruction. We recited in full at the bottom of page 51 of our brief, but it appears in the appendix at pages 1879 through 1883. So there was a jury instruction conference, and both parties submitted competing instructions. Neither party proposed an instruction that the CIT litigation did not involve the same claim terms. The judge came up with that on his own. But you can see at the bottom of page 51 of our brief exactly what we proposed. And neither we nor anybody else proposed an instruction telling the jury that the infringement issues were different or that the claim terms were different. And when the judge insisted on doing that, you can see that Mr. Lovell is objecting. So we did an objection, and we submitted an alternative instruction. And now I also want to close by just pointing out that this one-piece, two-piece dichotomy is really a false dichotomy. As I said, you can have a waterline with multiple pieces, but it doesn't work unless they're joined in a single integral unit. And here, you can't have a separate arc gripper cannot be the cylindrical body member because it's not joined with the connecting body. It moves independently. It moves axially. It's inserted under the connector body, not as claimed in the patent over it to deform the connector body independently or inwardly. It's a different invention. This inventor claimed a gripping and sealing by a single connector body, not by a bunch of unrelated pieces. And as I said in my opening remarks, if you have a bunch of unrelated pieces, if you have a gripper that's not part and parcel of the cylindrical body member, then you've just written out the rest of the claim limitations. Claim one, limitation C, the cylindrical body member not only has to include the cylindrical sleeve, it's got to be a cylinder that forms a bore. It has to be connected at one end of the post. An arc gripper doesn't have that. And under the judge's claim construction, you've eviscerated all of those additional claim elements. You've just written them out. And that's the problem with the judge's extra sentence that he added, where he said, doesn't have to be an integral one-piece body. The problem with that is that you can have disconnected pieces that no longer meet the claim limitations here. And that's exactly what the CIT held. And I would commend you to look at the CIT decision. It's published at 896 Federal Sup at 1281. And if you look at this decision at 1281, you can see the CIT explains in great detail why you cannot consider our separate gripper to be part of the connecting body. And they say, for all the reasons I've cited here, because then you've just disconnected the thing in a non-functional way. Thank you.